IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 24 CR 37 |
| | ) | Honorable Matthew F. Kennelly |
| MOHAMED WORKU | ) | |
| | ) | |

### DEFENDANT MOHAMED WORKU SENTENCING MEMORANDUM

Now comes Mohamed Worku by and through his attorney Bedi & Singer LLP, and respectfully requests that this Honorable Court, in light of *Gall v. United States*, 552 U.S. 38 (2007) and the factors set forth in 18 U.S.C. § 3553(a), sentence him to time considered served followed by no supervised release, which is sufficient, but not greater than necessary to comply with the purposes of sentencing. In support, the following is offered:

### I. ADVISORY SENTENCING GUIDELINE CALCULATION

As the Seventh Circuit has formally established, a sentencing court's inquiry begins by calculating the defendant's advisory Guideline range. *United States v. Schroeder*, 536 F.3d 746, 755 (7th Cir. 2008). Mr. Worku was found guilty of Bank Robbery and Bank Theft. Bank Robbery has a base offense level of 20 with two points added under USSG §2B3.1(b)(1). Therefore, the total offense level is 22. The defense agrees with the PSR paragraph 22 that bank theft and bank robbery are grouped because the offense conduct in Counts 1 and 2 involves the same victim and the same act or transaction. USSG §3D1.2(a).

1

Mr. Worku's criminal history is correctly stated in the PSR placing Mr. Worku in criminal history II for two possession of controlled substances cases: one from 2013 in which Mr. Worku received probation and 27 days Cook County Department of Corrections and the other form 2017 in which he received one year in the Illinois Department of Corrections. The defense agrees with probation's calculation of the guidelines in the matter which calculates the guideline at 46-57 months.[1]

II. SENTENCING CONSIDERATIONS PURSUANT TO 18 U.S.C. § 3553(a) SUPPORT

This Court maintains unfettered discretion to fashion a sentence that punishes the offender, as opposed to just the crime. *Pepper v. United States*, 131 S.Ct. 1229, 1240 (2011); *United States v. Ramirez-Mendoza*, 683 F.3d 771, 777 (7th Cir. 2012). After first calculating the applicable sentencing range, district courts are then tasked with imposing a sentence that is reasonable under 18 U.S.C. § 3553(a). However, because sentencing guidelines ranges are not to be presumed reasonable, this Court must consider whether they actually conform to the case's particular circumstances. *Nelson v. United States*, 555 U.S. 350 (2009) (per curiam); *United States v. Dean,* 414 F.3d 725, 730-31 (7th Cir. 2005). Below guidelines sentences have been affirmed when they are "rooted in § 3553(a), [and] sufficiently individualized to the circumstances of [the] case." *United States v. Wachowiak*, 496 F.3d 744, 745 (7th Cir. 2007).

The United States Supreme Court has determined a defendant's history and characteristics are "clearly relevant to the selection of an appropriate sentence," and

---

[1] This calculation is based on the jury's verdict of guilty on both counts. However, should the court grant the defendants rule 29/33 motion regarding count 1 this calculation would change. Specifically, the base offense level for bank theft is 6 and the maximum term of imprisonment would be 10 years. Mr. Worku's criminal history category is II which, coupled with a base offense of 6, would produce a guideline range of 1-7 months.

2

each must "fit the offender and not merely the crime." *Pepper,* 562 U.S. at 488, 492. The sentencing court "must make an individualized assessment based on facts presented." *Gall,* 552 U.S. at 50; *Koon v. United States,* 518 U.S. 81, 113 (1986) (The sentencing judge "consider[s] every convicted person an individual and every case as a unique study in the human failing that sometimes mitigate, sometimes magnify the crime and punishment to ensue"). When considering all of the § 3553(a) factors, this Court will gain a fuller and more precise picture of Mr. Worku, showing a sentence of time considered served is appropriate.

### 1. Nature and circumstances of the offense

Mr. Worku was arrested on January 22, 2024.[2] While respecting the jury's verdict and the court's ruling, Mr. Worku maintains his innocence. Therefore, Mr. Worku does not agree with the facts as stated in paragraphs 8-14 of the PSR and objects to these paragraphs.

However, not all bank robberies are the same. Even as presented at trial, there is no evidence that Mr. Worku presented a weapon or possessed a weapon during the interactions at the bank. As noted in the probation department's recommendation, "He did not make any statements, either verbally or in writing, that he had a weapon or was going to cause physical injury/harm to anyone. The defendant did not make any gestures to suggest he had a weapon." (Probation Sentencing Recommendation at 2). The note presented as evidence at trial said nothing more than the money was a "gife" and that it would be paid back. The note did not even say anything about anyone getting hurt if they

---

[2] Mr. Worku has been detained since his arrest on January 22, 2024 which will be 437 days or 14 months and 12 days at the day of sentencing on April 2, 2025.

did not do what was requested. There were no words spoken to anyone in the bank, no gestures made to anyone in the bank. The video showed the person's hands were not always in their pockets and there was nothing intimidating about the person. Not all bank robberies are the same, and surely the actions depicted in the video and the evidence presented at trial reflect that the incident in question was not as dangerous and threatening as some bank robberies.

### 2. Personal history and characteristics

As is reflected in the PSR, Mr. Worku was born in a refugee camp and brought to the United States at a very young age. Mr. Worku became a ward of the state and was bounced around between foster care homes. At times, it appears he lived with his father but ended up back in foster care. (PSR, ¶79).

The PSR reflects that Mr. Worku may have immigration consequences because of this conviction. The foster care system failed Mr. Worku. Throughout all the years that Mr. Worku was under the care of DCFS, they never helped him obtain United States citizenship. Now, after living in the United States since he was one year old, he is still enduring the issue of immigration. Assuming that paragraph 82 of the PSR is correct, Mr. Worku was born in Kenya but is a citizen of Ethiopia with permanent residency status in the United States. However, according to probation, a search revealed that he has an outstanding order of removal pending with ICE, and a final order of removal which was entered on October 17, 2018. The system failed Mr. Worku. He was brought here as a baby and as a refugee. He was bounced between foster homes. He was in the State's care as a ward of DCFS, yet no one assisted him in getting citizenship.

4

Interestingly, as this court is aware, Mr. Worku was acquitted of a previous federal charge for bank robbery under case number 1:21CR00771-001. When he was acquitted, he was released from custody. He was not held in ICE custody, notwithstanding the final order of removal which had been previously entered. Nevertheless, Mr. Worku became a ward of the state at a very young age. DCFS has custody of individuals until they are 21 years old, and never did DCFS nor the state assisted Mr. Worku in achieving full citizenship.

Not only did the state fail to assist Mr. Worku with citizenship, the state also failed to help him with education, employment, and other services. While Mr. Worku is now over the age of 21, the state had custody and was responsible for him for many years and his formative years. This lack of support and guidance from a system meant to help Mr. Worku did not set him up to achieve stability in his life. This system did not even help him obtain the base level of stability, citizenship in the only country he has ever known to call home.

3. **Deterrence, just punishment, and other policy considerations support a sentence of time considered served**

The time Mr. Worku has spent in custody during this case and while in custody during his previous case, of which he was acquitted, is sufficient, provides deterrence and is the appropriate punishment. Mr. Worku has spent a significant amount of time in custody for this matter. Even though he chose to hold the Government to their burden and proceeded to trial, that does not mean he does not understand the seriousness of cases and being in custody. His little criminal history, which is nonviolent, the nonviolent

nature of this case and his other personal characteristics all show that time considered served is the appropriate sentence.

### III. OBJECTIONS TO THE PRESENTENCE REPORT AND SUPPLEMENT

Mr. Worku objects to supervised release. As discussed above, based on the PSR Mr. Worku has a final order of deportation and a warrant of removal pending with ICE.

Furthermore, regarding mandatory restitution in this case. The government believes that the criminal conduct resulted in a loss of $2,068 dollars but that the officers seized $1,848.22 from Mr. Worku during his arrest. Therefore, the amount of restitution owed should be reduced, by the amount which was seized.[3]

### IV. CONCLUSION

This Court maintains significant discretion to not only craft a reasonable, appropriate sentence pursuant to the Guidelines but to consider the totality of circumstances surrounding the individual involved, including, among other factors, the nature and circumstances surrounding the conviction, his personal history and characteristics, as well as the long-standing collateral consequences the current matter will have on him.[4] The instant conviction has already and will continue to affect the rest of his life adversely. In sentencing Mr. Worku to the requested sentence, this Court would

---

[3] Mr. Worku voluntarily gave up his right to a jury on the issue of forfeiture. (Transcript 11/14/24 page 288-289). The court indicated that, it would decide the issue of forfeiture in conjunction with the sentencing hearing. *Id.* It is the defense position, that should the court order the money recovered to be forfeited that any restitution amount should be reduced by the amount of money recovered and found to be forfeited by the court.

[4] The stigma of being labeled a federal felon is profound. *United States v. Smith*, 683 F.2d 1236, 1240 (9th Cir. 1982) ("The stigma of a felony conviction is permanent and pervasive."); see also Michelle Alexander, The New Jim Crow (Paperback ed. The New Press 2012) at 94 ("Once a person is labeled a felon, he or she is ushered into a parallel universe in which discrimination, stigma, and exclusion are perfectly legal."); *Id.* at 163 ("When someone is convicted of a crime today, their 'debt to society' is never paid."); and *United States v. Wuff*, 758 F.2d 1121, 1125 (6th Cir. 1985) ("a felony conviction irreparably damages one's reputation.").

6

accomplish the goals of sentencing by punishing the individual – not merely the crime – to a sentence that is sufficient, but not greater than necessary to comport with all of the sentencing considerations contained in 18 U.S.C. § 3553(a).

        Respectfully submitted,

        s/ Dena M. Singer
        Dena M. Singer
        Jonathan S. Bedi
        Bedi & Singer, LLP
        53 West Jackson Blvd., Suite 1101
        Chicago, IL 60604
        (312) 525 2017
        jbedi@bedisinger.com
        dsinger@bedisinger.com
        **Attorney for the Defendant**

## CERTIFICATE OF SERVICE

The undersigned attorney, Dena M. Singer, certifies the foregoing document was filed via the Court's ECF system.

s/Dena M. Singer
Attorney for Defendant
