UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MOHAMED WORKU | No. 24 CR 37<br><br>Judge Matthew F. Kennelly |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant Mohamed Worku robbed a Citibank on January 22, 2024, making away with $2,068. Defendant entered the bank wearing a face mask to disguise his appearance. He presented the bank teller with a demand note. The teller immediately complied with defendant's demands and handed over the cash in her teller drawer. The government recommends a guidelines sentence of 48 months' imprisonment, followed by three years of supervised release.

**I.     Background**

On January 22, 2024, defendant walked into a Citibank in Lincoln Park, wearing gloves, a hoodie, and a surgical face mask covering his face. Three Citibank employees were present—the teller, the branch manager, and another bank employee. After entering the bank, defendant attempted to follow the teller into an employee-only area that led to the teller stations where the money was located. After being directed to the teller station, he presented the teller with a handwritten demand note, stating "Please Give me the money I'll pay it Back Soon Banker's Gife to me in advance." Government's Version of Offense ("GVO") Ex. 2. The teller handed him all the money in her teller drawer—approximately $2,068—and defendant fled

the bank. GVO Ex. 4. After defendant's exit, the branch manager immediately instructed another employee to lock the doors and then she called 911 to report the robbery.

Defendant's flight from the bank was captured on security cameras of nearby businesses. GVO Ex. 7-8. Defendant ran down the street to a nearby Target, where he began attempting to change his appearance. Defendant purchased a new backpack and different colored jacket. He then ditched the jacket he had been wearing during the robbery—throwing it into a trash can in Target where it was later recovered by law enforcement. GVO Ex. 9.

Defendant was apprehended by law enforcement shortly thereafter. After his arrest, while alone in an interview room, defendant stated that, though he did not have a weapon, "I was gonna buy me one" and "there was gonna be a shoot out." GVO Ex. 17. Defendant further stated, "first motherfucker who ride up on me [referring to police approaching him] talking about how I fit the description, dead." *Id.*

Defendant was charged with bank robbery and bank theft. After a jury trial, defendant was found guilty on both counts.

## II. The Probation Office's Guideline Calculations are Accurate.

The government agrees with the criminal history and offense level calculations set forth in the Presentence Investigation Report prepared by the U.S. Probation Office. The adjusted offense level is 22,[1] and defendant is in criminal history category

---

[1] The government agrees with the PSR that Counts 1 and 2 (bank robbery and bank theft) group under Guideline § 3D1.2(a). PSR ¶ 22.

2

II, which, when combined, result in an advisory guidelines range of 46 to 57 imprisonment. PSR ¶ 118. The guidelines range for a term of supervised release is one to three years. PSR ¶ 122.

### III. The § 3553(a) Factors Warrant a Sentence Of 48 Months' Imprisonment.

The advisory guidelines range is the starting point and initial benchmark for determining the appropriate sentence for a defendant. *United States v. Saldana-Gonzalez*, 70 F.4th 981, 986 (7th Cir. 2023). After calculating the guidelines range, the court must consider what sentence is appropriate for the individual defendant in light of the factors set forth in 18 U.S.C. § 3553(a). *United States v. Pankow*, 884 F.3d 785, 793 (7th Cir. 2018). A guidelines sentence of 48 months' imprisonment is appropriate in this case. This sentence takes into account the seriousness of the offense conduct, while also recognizing defendant's personal history and characteristics.

#### A. Nature And Circumstances Of The Offense

The offense conduct—bank robbery—is serious. This remains the case even though defendant accomplished the robbery by using a demand note. Although there is no indication that defendant possessed a gun or dangerous weapon during the robbery, the victim teller could not have known that. Indeed, the victim teller testified to feeling "panicked" and worrying that the situation "could turn into hostage if he was carrying [a weapon]." Trial Tr. at 42, 54 (Dkt. 78-1). She felt she had no choice but to comply with defendant's demands.

Further, the defendant took deliberative steps to conceal his identity, suggesting some degree of forethought and planning—he wore gloves, covered his face with a face mask, and later changed his clothes to avoid being recognized as the robber.

### B. History And Characteristics Of Defendant

Defendant has multiple criminal convictions: four adult convictions for possession of a controlled substance, and multiple juvenile adjudications, including two for robbery. PSR ¶ 39-45. This criminal history, spanning over multiple years, is troubling.

Most concerning is that, just a few short days before his arrest for the robbery in this case, defendant had been released from pretrial detention after being acquitted of very similar conduct. Specifically, on December 29, 2021, defendant was arrested by the Chicago Police after stealing $595 from a Fifth Third bank. GVO Ex. 19. Defendant's actions that day were remarkably similar to the conduct underlying the instant offense—he entered the bank wearing a mask covering his face and presented the bank teller with a note reading, "Give me the money Please thank you." GVO Ex. 20. Shortly thereafter, law enforcement arrested defendant in the vicinity of the bank. GVO Ex. 19. Law enforcement seized approximately $493.15 from defendant along with the demand note. *Id.*; Ex. 25. Defendant was charged in the Northern District of Illinois with bank robbery in Case No. 21 CR 771. After a jury trial, defendant was acquitted of the sole count of bank robbery. Case No. 21 CR 771, Dkt. 69. Defendant was released from pretrial detention on January 19, 2024. Less than 72 hours later, he committed this bank robbery.

4

The government recognizes that defendant was acquitted of bank robbery in relation to his actions on December 29, 2021, and this conduct, therefore, is not relevant conduct under Guideline § 1B1.3(c). Nonetheless, this conduct can be considered as part of the court's analysis of the § 3553 factors. In the government's view, even though defendant was acquitted of the bank robbery charge, the fact that he had been charged and incarcerated for very similar conduct in the recent past should have impressed upon him the gravity of stealing money from banks. At the very least, he was on notice that taking money from banks in the fashion that he had done in the past was not lawful. But instead, less than 72 hours after being released from federal custody, defendant robbed the Citibank, demonstrating a total disregard for the law.

On the other hand, several mitigating factors exist in this case. Specifically, the PSR reflects that defendant had an instable childhood, including living in multiple different foster homes. PSR ¶ 79. Defendant also appears to suffer from mental health and substance abuse issues. PSR ¶ 89-90, 95-100.

### C. The Need To Promote Respect For The Law, Provide Just Punishment, Provide Adequate Deterrence, and Protect The Public

The need to protect the public is paramount, given defendant's repeated conduct of robbing or stealing from banks. While nothing indicates defendant had a weapon during this offense, his actions nonetheless created a tangible risk of violence to innocent bystanders. The need to protect the public is further highlighted by defendant's post-arrest statements. Specifically, defendant made statements about his desire to obtain a gun and engage in a "shoot out" with police. Given these

5

statements, and defendant's pattern of stealing from banks, it is not difficult to imagine that defendant's actions could "spiral into more dangerous situations in which people get harmed." *United States v. Beck*, 455 F. App'x 700, 701 (7th Cir. 2012).

Considering all of these factors, the government recommends a sentence of 48 months' imprisonment, which is sufficient, but not greater than necessary, to accomplish the goals of sentencing.

## IV. The 18 U.S.C. § 3553(A) Factors Support A Three-Year Term Of Supervised Release.

The § 3553(a) factors addressed above also support the imposition of a three-year term of supervised release, which is within the guidelines range. A term of supervised release is appropriate, even though defendant may be removed from the country after incarceration. *See* PSR ¶ 82. Under Guideline § 5D1.1(c), the court "ordinarily should not impose a term of supervised release in a case in which supervised release is not required by statute and the defendant is a deportable alien who likely will be deported after imprisonment." But, as explained in Application Note 5 to the Guideline, the court should consider imposing a term of supervised release "if it would provide an added measure of deterrence and protection based on the facts and circumstances of a particular case." Here, given that defendant was previously released from federal custody and went on to commit the instant bank robbery within days of his release, a term of supervised release is warranted to provide an added measure of protection to the public.

The government agrees with the mandatory, discretionary, and special conditions suggested by the Probation Office because these conditions will provide defendant with resources, support his rehabilitation into the community, and encourage his compliance with the law. The government recommends adding, "if not removed or deported from the country," to Discretionary Condition 15 and Special Condition 14, to account for the fact that defendant might be removed from the country after serving his sentence.

                Respectfully submitted,
                MORRIS PASQUAL
                Acting United States Attorney

By:   *s/ Alexandra Morgan*
       ALEXANDRA MORGAN
       Assistant United States Attorney
       United States Attorney's Office
       219 South Dearborn Street
       Chicago, Illinois 60604
       (312) 353-1123

Dated: March 14, 2025